J-A13037-26          2026 PA Super 164

LAURIE BULLARD

        v.

JOEL BULLARD

APPEAL OF:  GILLILAND VANASDALE
LAW OFFICE, LLC

:  IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:
:  No. 969 WDA 2025
:
:

Appeal from the Order Entered July 8, 2025
In the Court of Common Pleas of Allegheny County
Family Court at No. FD 17-004053-007

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:        **FILED:  July 29, 2026**

Gilliland Vanasdale Law Office, LLC (Law Office) appeals from the order denying the contempt petition it filed to enforce payment of guardian *ad litem* (GAL) fees owed by Laurie Bullard (Mother).  Upon review, we reverse the order and remand to the trial court judge for further proceedings.

*BACKGROUND*

Mother and Joel Bullard (Father) have a history of "protracted and contentious" litigation involving the custody of their children.  Trial Court Opinion (TCO), 11/18/25, at 2.  On June 26, 2023, the trial court entered an order appointing Law Office's employee, Jill Sinatra, Esquire, to serve as GAL and "represent the best interests of the children."  Order, 6/26/23, at 1.  The order states that it was entered pursuant to Pa.R.C.P. 1915.11-2, which permits the court to "appoint a guardian *ad litem*" in custody proceedings, and

"apportion to the parties the reasonable cost of the guardian *ad litem*."

Pa.R.C.P. 1915.11-2(a).  The June 26, 2023 order states:

> A deposit of $1,000.00 shall be made into the GAL's escrow
> account within ten (10) days of the date of this order.  The GAL
> shall be paid an hourly rate of $125.00.  The deposit and hourly
> rate shall be split between the parties with [Mother] paying fifty
> percent (50%) and [Father] paying fifty percent (50%).  The
> GAL's fees shall be replenished as needed.

Order, 6/26/23, at 2.

Attorney Sinatra left her employment with Law Office "between

November 2023 and January 2024."  TCO at 3.  The trial court explained:

> A Status Conference was held on January 22, 2024.  Ms. Sinatra
> informed the court that she had left [Law Office] and was now
> working at Sinatra & Istik.  The court asked Ms. Sinatra if she was
> being paid for her services as a GAL.  She responded that there
> were still substantial monies owed to her, both while at [Law
> Office] and at Sinatra & Istik.  The [c]ourt requested that Ms.
> Sinatra provide the court and the parties with a breakdown of the
> fees owed.  Ms. Sinatra communicated with the court, copying all
> parties and counsel, stating that $2,209.00 was owed to [Law
> Office], and $1,025.00 was owed to Sinatra & Istik.  She also
> requested that each party pay an additional $1,000.00 retainer
> for services.
>
> After the Status Conference, an Order was issued on January 22,
> 2024[,] that same day[,] ordering that Mother pay the fees owed
> to [Law Office]….  The Order was sent to [Law Office].
>
> This Order was amended somewhat on February 8, 2024[,] after
> the court received a more accurate breakdown of fees owed to the
> GAL.  The February 8, 2024 Order directed that Mother was to pay
> $2,209.69 to [Law Office] by February 21, 2024….

*Id.* at 4.

The February 8, 2024 order directing Mother to pay GAL fees to Law

Office states:

> The Guardian *ad Litem* (GAL) informed the [c]ourt and the parties of the correct breakdown of the fees owed to her current firm and her former firm[, Law Office,] for services rendered.
>
> … No later than February 21, 2024, Mother shall pay $2,209.69 to [Law Office].

Order, 2/8/24, at 1 (underline in original).

On February 23, 2024, Mother "remitted the sum of $500" to Law Office, leaving an outstanding balance of $1,709.69. Petition for Civil Contempt, 7/1/25, at 2. The trial court "was notified at the March 12, 2024 Judicial Conciliation that Mother only made one … payment" and "still owed $1,486.25 to Sinatra & Istik for work performed in the case, in addition to fees owed to [Law Office]." TCO at 5. During the ensuing months, Mother failed to pay outstanding GAL fees. The custody matter proceeded to trial in August of 2024, and Attorney Sinatra continued to seek payment both before and after trial. *See id.* at 6-9. Attorney Sinatra's appointment ended on September 4, 2024, when the trial court issued a final custody order. *Id.* at 6.

On June 25, 2025, Law Office notified the trial court that it would be presenting a contempt petition in motions court to enforce payment of the $1,709.69 owed by Mother pursuant to the February 8, 2024 order. Law Office presented the petition without success on July 1, 2025. According to Law Office, the trial court "questioned whether the issuing [c]ourt [wa]s the appropriate forum to enforce the Order." Law Office's Brief at 13 (citing TCO at 15). Law Office also states that "during the presentation [of the petition], the trial judge expressed frustration that a 'Cranberry Township' law firm

would bother seeking payment, despite knowing work was performed as ordered to be paid." *Id.* at 4.

On July 8, 2025, the trial court entered the order denying Law Office's contempt petition. The order, in entirety, states:

> AND NOW, to-wit, this 8th day of July, 2025, upon consideration of Gilliland Vanasdale Law Office, LLC's Petition for Civil Contempt, it is hereby ORDERED, ADJUDGED and DECREED as follows:
>
> 1. Gilliland Vanasdale Law Office, LLC's Petition is DENIED.

Order, 7/8/25.

On July 15, 2025, Law Office filed a motion for reconsideration. However, the trial court "set the date of August 13, 2025 as the date when the court intended to address" the reconsideration motion. Law Office's Brief at 8. As August 13, 2025 was more than 30 days after the July 8, 2025 order denying relief, Law Office filed a notice of appeal on August 5, 2025.[1] On September 16, 2025, the trial court ordered Law Office to file a Pa.R.A.P. 1925(b) concise statement. Law Office complied on October 1, 2025. On November 18, 2025, the trial court issued an opinion asserting, *inter alia*, that Law Firm lacked standing and the July 8, 2025 order was unappealable.

Law Office presents the following issues for review:

> 1. Whether the [trial c]ourt erred and/or abused its discretion, when the [trial c]ourt, by order entered on July 8, 2025, denied

---

[1] A party aggrieved by a decision in a domestic relations matter may file a motion for reconsideration. Pa.R.C.P. 1930.2(b). "If the court does not grant the motion for reconsideration within the time permitted, the time for filing a notice of appeal will run as if the motion for reconsideration had never been presented to the court." *Id.*

- 4 -

due process to GAL [A]ppellant, by refusing its request for a contempt hearing to enforce the GAL fee award, impairing Appellant GAL's substantive property rights in the GAL fee award, a right secured from interference by the impairment of obligations clause of the constitution, inherent in the contractual obligations upon which the GAL's fee award was grounded.

2. Did the trial court violate due process and show bias when Motions Court was not of record and during the presentation the trial judge expressed frustration that a "Cranberry Township" law firm would bother seeking payment, despite knowing work was performed as ordered to be paid.

3. Did the trial court violate due process by failing to see that payment to GAL's law office as ordered, and for GAL services as also ordered, were not paid?

4. Did the trial court aid and abet theft of services by ordering GAL to perform services, which were performed in an exemplary manner, and then not see that said legal services were paid.

5. Did the trial court err by failing to hold a hearing on the GAL's Petition for Contempt, and further, on its Motion for Reconsideration.

6. Did the trial court fail to follow the Guardian Ad Litem Child Statute that provides for payment to GAL for services rendered.

7. Did the trial court fail to enforce its own Order for payment in an arbitrary and unfair manner to the GAL.

Law Office's Brief at 4-5.[2]

*DISCUSSION*

We find Law Office's sixth and seventh issues to be dispositive. However, we first address the trial court's assertions regarding standing and the appealability of the order denying Law Firm's contempt petition.

---

[2] Neither Mother nor Father has filed a brief.

The trial court states that Law Office is not "a real party in interest" and lacked standing "to pursue this litigation in Family Division." TCO at 15. We disagree, as this Court has held that "family court [i]s the proper civil division for the GAL to file [a] petition for contempt, because the family court originally ordered the [parent] to pay GAL the fees." **S.G. v. J.M.G.**, 186 A.3d 995, 997 (Pa. Super. 2018) (citing **Slusaw v. Hoffman**, 861 A.2d 269, 274–275 (Pa. Super. 2004)). We observed that "the custody court *ordered* the parent to pay these costs. As such, the issuing court was the proper court to adjudicate the alleged contempt of its order." **Id.** (emphasis in original). Here, Attorney Sinatra is no longer employed by Law Office, but it is undisputed that she worked there when the trial court appointed her and ordered Mother to pay half of the GAL fees. **See** Order, 6/26/23 (appointing Attorney Sinatra as GAL and stating that the "GAL shall be paid an hourly rate of $125.00."). Therefore, it was proper for Law Office to seek recourse with the trial court.

We also reject the trial court's contention that the July 8, 2025 order is unappealable. The trial court states that Law Office "cannot appeal the July 8, 2025 Order of Court because it is not a final order." TCO at 13. The trial court claims the order is an "interlocutory order because it did not dispose of any new or old claims that were raised." **Id.** at 14. To the contrary, the July 8, 2025 order disposes of Law Office's contempt claim, and is appealable because the trial court entered a final custody order. **See Schultz v. Schultz**, 70 A.3d 826, 828 (Pa. Super. 2013) (explaining that an order denying a contempt petition is final and appealable when it denies relief pursuant to a

- 6 -

prior final order); TCO at 2 (stating that the "custody case was resolved … on September 4, 2024."). The July 8, 2025 order disposes of Law Office's claim concerning Mother's contempt of the February 8, 2024 order requiring her to pay outstanding GAL fees. Accordingly, we consider Law Office's challenge to the denial of its contempt petition.

This Court will reverse an order denying a contempt petition upon a showing that the trial court misapplied the law or exercised its discretion in a manner that lacked reason. *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012) (citation omitted). We have explained:

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*K.M.G. v. H.M.W.*, 171 A.3d 839, 844-45 (Pa. Super. 2017).

As indicated above, Law Office's sixth and seventh issues are persuasive. Law Office argues that the trial court's denial of the contempt petition was contrary to the law providing for payment of GAL services. Law Office's Brief at 5. Law Office states:

> The Guardian Ad Litem is entitled to be paid for the work performed. *L.M.P. v. E.C.*, 149 A.3d 877, 880 [(Pa. Super. 2016)]. Failure to grant a hearing on [Law Office's] petition for a contempt hearing to enforce the order to pay [Law Office's] court ordered fees was error. *S.G. v. J.M.G.*, 186 A.3d at 997-998.

*Id.* at 16. Law Office makes the corresponding argument that the trial court's denial of relief was contrary to its February 8, 2024 order, and "arbitrary and unfair." *Id.* We agree that the trial court's denial of the contempt petition was contrary to the law and lacking in reason.

After appointing a GAL, the trial court "may apportion to the parties the reasonable cost of the guardian *ad litem*." Pa.R.C.P. 1915.11-2(a). In its order appointing Attorney Sinatra as GAL, the trial court stated that "[t]he GAL **shall be paid** an hourly rate of $125.00," divided equally between Mother and Father. Order, 6/26/23, at 2 (emphasis added). On February 8, 2024, the trial court entered the order stating that Attorney Sinatra had provided "the correct breakdown of the fees owed to her current firm and [Law Office,]" and directed Mother to pay $2,209.69 to Law Office. Order, 2/8/24, at 2. As Mother had only paid $500.00 of the $2,209.69 due under the order, Law Office filed a contempt petition in the manner prescribed by the Domestic Relations Code. The pertinent Rule states:

> If a person disobeys an order of court other than a custody order, the court may issue a bench warrant for the arrest of the person and if the disobedience is willful may, after hearing, adjudge the person to be in contempt.

Pa.R.C.P. 1915.14; *see also Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (reiterating that "a party must have violated a court order to be found in civil contempt.").

> In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court

order. To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent.

***Thomas v. Thomas***, 194 A.3d 220, 226 (Pa. Super. 2018) (citations and quotation marks omitted).

In its contempt petition, Law Office averred that Mother knew about the February 8, 2024 order requiring her to pay outstanding GAL fees, and "willfully failed to abide by the Order of Court by failing and refusing to make payment to [Law Office]." Petition for Civil Contempt at 2. Thus, Law Office requested enforcement of the February 8, 2024 order, including the issuance of a bench warrant, the imposition of sanctions, and "a hearing or other appropriate action." ***Id.*** at 3. Inexplicably, the trial court denied relief.

The trial court provided no explanation in its July 8, 2025 order denying Law Office's contempt petition. In its opinion, the trial court states:

> [Law Office] alleged that the undersigned made comments to their attorney regarding being located in Cranberry Township, Pennsylvania. <u>The undersigned wishes to make clear that she denies being short-tempered or showing any bias during any proceeding involved in the case</u>. But even if this happened, according to [***Commonwealth v.***] ***Kearney***, [92 A.3d 51, 61 (Pa. Super. 2014),] a judge is allowed to make such remarks without it affecting their impartiality. Therefore, [Law Office's] alleged statements and actions in the petitions for recusal of [the trial court] have no basis and should not be upheld. This court was ready, willing and able to hear argument on the reconsideration, and did not have that opportunity due to the instant appeal.

TCO at 17-18 (underline in original).

The trial court's reasoning is flawed. Notably, the trial court does not expressly deny that it "expressed frustration that a 'Cranberry Township' law firm would bother seeking payment, despite knowing work was performed as ordered to be paid." Law Office's Brief at 4. Also, the trial court references "petitions for recusal" which are not otherwise referenced in the trial court's opinion, Law Office's brief, or our review of the record. The trial court further claims it intended to hear argument on Law Office's reconsideration motion, but disregards that it never granted reconsideration, and allegedly conveyed its intent to address the motion more than 30 days after the period for Law Office to appeal. *See id.* at 8. In sum, we disagree with the trial court's conclusion that it "was within [its] rightful discretion to choose not to hold a hearing on the Petition for Contempt and Motion for Reconsideration, as there are no applicable statutory requirements that impede the court's use of discretion, and caselaw supports the court's use of discretion in this matter." TCO at 20. The trial court's discretion is not unfettered. *See Anthony Biddle Contractors, Inc. v. Preet Allied Am. St., LP*, 28 A.3d 916, 926 (Pa. Super. 2011). As discussed above, statutory and case law compel contempt proceedings when a party has failed to comply with an order to pay GAL fees.

Finally, we recognize a GAL's important role in legal proceedings involving children. A trial court appoints a GAL in custody cases when it "finds that the appointment is necessary for determining the child's best interest." Pa.R.C.P. 1915.11-2(a)(1). "The function of the [GAL] is to represent and protect unrepresented minors and their interests." *C.L. v. M.P.*, 255 A.3d

- 10 -

514, 525 (Pa. Super. 2021) (*en banc*). Accordingly, when a party has been ordered to pay GAL fees and fails to do so, the family court is "the proper civil division for [the GAL] to file [a] petition for contempt because [that c]ourt originally ordered [the party] to pay [the GAL] fees." **Slusaw**, 861 A.2d at 275. The purpose of the contempt proceeding is remedial, and "sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order." **K.M.G. v. H.M.W.**, 171 A.3d 839, 844 (Pa. Super. 2017) (citation omitted). "The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." **Habjan v. Habjan**, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted). Consistent with the foregoing authority, a GAL is entitled to be paid for services, and is entitled to pursue a contempt action when a party has failed to pay for the services ordered by the trial court.

*CONCLUSION*

The trial court misapplied the law and abused its discretion in denying Law Office's contempt petition. Accordingly, we reverse the July 8, 2025 order and remand the matter to the trial court judge for contempt proceedings consistent with this opinion.[3]

---

[3] The case shall return to the trial court judge, despite the judge being transferred from the Family Division to the Civil Division, as the trial court
*(Footnote Continued Next Page)*

Order reversed. Case remanded for contempt proceedings. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/29/2026

---

judge has presided over the case for more than three years and is familiar with the parties and procedural history. Accordingly, we direct the Superior Court Prothonotary to forward a copy of this opinion to the President Judge of the Allegheny County Court of Common Pleas.

- 12 -